WILLIAM R. PERKINS *vs.* UNION BUTTON-HOLE & EMBROIDERY MACHINE COMPANY.

If a subscriber to articles of association, which are prepared and signed with a view to form a corporation under the Gen. Sts., promises therein to take a certain number of shares upon certain terms, and fails to perform his part of the stipulations, he cannot maintain an action against the corporation, after it is formed, for a refusal to deliver to him the shares, upon his tender of payment therefor, although his name is entered as a subscriber in a subscription book and he is requested to pay for the shares subscribed for by him, and the same are afterwards allowed to be taken by another person, without selling them under the statute for non-payment of assessments.

Articles of association were prepared for the purchase of certain patent rights, with a view to form a corporation under the Gen. Sts., providing that the first meeting might be called by a notice signed by one or more of the associates and given to each subscriber and published in certain newspapers seven days before the time of the meeting, and fixing the amount of the capital stock and the number of the shares, and providing that all subscriptions should be payable either wholly or partly (according to the amount subscribed) on the organization of the company. Various persons signed these articles, specifying the number of shares which they would respectively take. Before the first meeting was called one of the subscribers went away from Massachusetts, leaving a place of business in Boston in the charge of his son. A notice of the first meeting was duly issued and published, and the son of the subscriber above referred to acknowledged the due receipt of a copy thereof in the name of his father. The meeting was held; a short extension of time was granted for the first payment upon the subscription; the subscriber above referred to was not present or represented at the meeting, but his name was afterwards

entered as a subscriber in a subscription book of the company; due diligence was used in sending to him notices of the extension of the time of payment, but without reaching him; he made no payment on his subscription, and after the expiration of more than two months from the extended time for the first payment, the directors erased his name from the articles of association and the stock-book, and allowed his shares to be taken by other persons, without selling them under the statute for non-payment of assessments. *Held,* that he could not thereafter maintain an action against the corporation for a refusal to deliver the shares to him, upon his tender of payment therefor.

CONTRACT. The declaration alleged that the defendants are and have been, since July 3d 1863, a corporation established according to the laws of Massachusetts and doing business in Boston, having a capital of $300,000, equally divided into twelve thousand shares; that the plaintiff on the 21st of April 1863, with the consent of the other owners and subscribers, signed articles of agreement, a copy of which was annexed, binding himself to take and pay for two hundred shares at the rate of twenty-five dollars per share, and the defendants agreed to deliver said shares to him according to the terms of the said agreement; that the other persons named in said agreement, or a portion of them, upon notice given to them, on the 3d of July 1863, duly and legally organized and established themselves as a corporation; that certain patent rights referred to in said agreement were afterwards conveyed to the defendants; that the plaintiff never received any notice of the meeting or formation of the corporation, and no legal notice was ever sent to him; and on the 2d of November 1863, as soon as he received informal notice thereof, he demanded of the defendants his shares, and offered to pay for the same; but the defendants refused to deliver the same to him, and represented that they had sold the same. The plaintiff claimed $15,000 damages.

The material portions of the agreement referred to in the declaration are as follows: " Articles of association. Subscription for an association, to be formed at Boston, Mass., under the General Statutes, for the purchase of the following named letters patent of the United States, and the manufacture and sale of machines and machinery necessary and incidental to the use of the inventions therein described," viz: [here followed the names of various letters patent issued to Kasimir Vogel and

**D. W. G. Humphrey.]** " Said corporation to be established within the city of Boston, in the county of Suffolk, under the name of ' The Union Button-Hole & Embroidery Machine Company.' The first meeting may be called by a notice signed by one or more of the associates, and given to each subscriber, and published in some newspaper printed at Boston and New York seven days before the time of meeting. The amount of the capital stock is hereby fixed and limited at three hundred thousand dollars. It is understood that, of this, seventy-five thousand dollars will be subscribed and paid for by said Vogel and Humphrey, by the transfer to said company of the above letters patent and inventions;" " and that said association will, simultaneously with the execution of proper papers on their part, in conformity with said agreement, upon acquiring its corporate capacity as aforesaid, not only cause stock of the par value of seventy-five thousand dollars to be issued, as aforesaid, to said Vogel and Humphrey, or their order, but will also pay to them in cash, from the payments made by other subscribers, the further sum of seventy-five thousand dollars. The whole number of shares to be twelve thousand, at twenty-five dollars each ; and .all subscriptions under one hundred shares to be paid for in cash on the organization of the company. The other subscriptions hereto are payable, one third in cash on the organization of the corporation, one third in six months with interest, and one third in twelve months with interest from the same date, or all in cash, at the option of the subscriber. Boston, April 21, 1863." This agreement was signed, amongst others, by the plaintiff, for two hundred shares.

At the trial in this court, before *Hoar,* J., the plaintiff testified that in the last of June 1863 he went to Montreal in Canada, and passed the time there and in New York, with an occasional visit to Boston, till the last of the following October, up to which time he had received no notice whatever of. any meeting or doing of the corporators, or of any assessment upon the shares subscribed for by him ; tnat on the 31st of October he r ιturned to Reading in this state, where he had resided for forty years, and on the 2d of November called upon Mr. Wood, the

treasurer of the corporation, and told him he had come to get his stock and pay for it ; that Wood replied that they had sold it and divided it, and were obliged to do so in order to enable them to fulfil the agreement with the patentees ; that a director who was present asked him to sign a power of attorney to trans-fer his stock, but he refused to do so ; that on the 4th of No-vember he received a letter from the treasurer requesting him to sign a similar power of attorney, which was inclosed ; and that on the 5th of November he again applied for his stock, and in-tended to take and pay for it if it could be delivered to him, but could not obtain it.

On cross-examination he testified that in April 1863 he hired and thereafter occupied an office at 124 State Street in Boston, and when he went to Montreal he left his office open in the care of his son to transact his business, or as far as his son could do it ; that he gave no notice to Wood or any one connected with the corporation that he was going, or where he could be found during his absence ; that he had no place of business in Mon-treal or New York, took no means to ascertain anything in regard to the stock he had subscribed for, and had no money when he went for his stock ; that his credit was good for $2000, and he had in fact made arrangements for borrowing that amount.

It appeared that on the 24th of June 1863 a notice signed by Wood, who was one of the subscribers to the agreement, was prepared, calling the first meeting on July 3d for the purpose of organizing as a corporation, choosing officers, adopting by-laws, &c., and that this notice was duly published in New York and Boston, and a copy of it was duly carried to the plaintiff's said office and delivered to his son, who receipted for the same thus : " Wm. R. Perkins, per W. E. P." A notice that the 16th of July had been appointed as the time for paying in the capital stock, payable one third in cash, one third in notes at six months, and one third in notes at twelve months, with interest, or all cash at the option of the stockholders, was put under the door of his former office, (which had been given up, as appeared by the testimony of the lessor,) about the 6th of July, and

afterwards mailed to him at South Reading and also at Mon-treal.

Wood was called as a witness and testified that he endeav-ored to find the plaintiff, or his place of residence, and took all such means as he could to procure payment upon the subscrip-tion ; that on July 3d 1863 the whole twelve thousand shares were subscribed for; that on the 14th of September only twelve hundred and forty shares were paid for in full, and many refused to take their shares, and great exertions were made to obtain new subscribers, and Vogel and Humphrey sent a written notice to the directors that the bargain must be carried out by the 30th of that month, or they would not hold themselves bound to carry it out; that by great exertion some new subscribers were got, and finally the shares that were left, including those sub-scribed for by the plaintiff, were as a last resort divided among certain of the directors. He further testified, and it appeared, that the plaintiff's name was entered as a stockholder for two hundred shares upon the stock ledger, and the account was bal-anced on the 21st of September by an entry of forfeiture of the shares; this evidence being admitted *de bene esse.*

The subscription book of the company also contained the name of the plaintiff as a subscriber for two hundred shares, and his name therein was erased by drawing a line through it, as it also was upon the original articles of agreement. The records of the stockholders were also put in, and showed that the notice of the first meeting had been sent to every subscriber, and that the company was organized in due form.

The records of the directors were also put in, and they did not show that the directors had ever authorized the striking out of the plaintiff's name from the subscription book, or the sale of the plaintiff's stock, or that said stock had ever been forfeited or sold by any vote of the directors. There was certain other evidence, not now material.

By the direction of the judge, a verdict was returned for the defendants, and the case reported for the determination of the whole court.

*G. A. Somerby & L. S. Dabney,* for the plaintiff. The plaintiff

became a member of the corporation by signing the articles of agreement, and was entitled to take the shares set against his name. *Kidwelly Canal Co.* v. *Raby,* 2 Price, 93. *Spear* v. *Crawford,* 14 Wend. 20. *New Hampshire Central Railroad* v. *Johnson,* 10 Fost. (N. H.) 390. *Chaffin* v. *Cummings,* 37 Maine, 76. *Holyoke Bank* v. *Goodman Paper Manuf. Co.* 9 Cush. 576. *Wyman* v. *Amer. Powder Co.* 8 Cush. 168. *Marlborough Branch Railroad* v. *Arnold,* 9 Gray, 159. Gen. Sts. *c.* 61, §§ 1–4. The defendants are estopped to deny that the agreement was intended for articles of agreement under Gen. Sts. *c.* 61, § 1, for they have acted under it as such, called and held meetings, &c. And they cannot deny that the plaintiff became a member of the corporation, and entitled to take the shares subscribed for by him. They sent him a notice of the first meeting, a notice to pay the assessment on his stock, and a power of attorney for its transfer. They gave him credit on their books for his stock. *Chester Glass Co.* v. *Dewey,* 16 Mass. 94. *Sewall* v. *Eastern Railroad,* 9 Cush. 5. If he was once a member of the corporation, he had not ceased to be such, when he demanded his stock. He had not withdrawn, or expressed a desire to withdraw. *Kidwelly Canal Co.* and *Chester Glass Co.,* above cited. And the defendants had not legally disposed of his stock · *Portland, &c. Railroad* v. *Graham,* 11 Met. 1 ; *Sewall* v. *Eastern Railroad,* 9 Cush. 5 ; or authorized the striking out of his name from the subscription book.

*J. G. Abbott & H. G. Parker,* for the defendants.

CHAPMAN, J. The agreement referred to in the declaration was designed to be the basis of a corporation, to be formed under Gen. Sts. *c.* 61. On the 21st of April, the day of the date of this agreement, there was no corporation of which the plaintiff could be a member, or with which he could contract. Until its organization, the articles of agreement could have no further effect than to bind the subscribers mutually to each other as individuals. When it was organized on the 3d of July, he had a right to take part in the organization, and thus act as a member in the organization, or to take the stock which he had sub scribed for, according to the terms of the by-laws which were then adopted, and thus become a member.

The third section of the statute prescribes the mode of calling the first meeting of corporations to be formed under it. The notice must be signed by one or more of the persons named in the articles of agreement, and a copy must be given to each member or published in some newspaper printed in the county at least seven days before the time of meeting. It appears that a notice was prepared, in conformity with this provision, dated June 24th, and signed by one of the associates. It was not served upon the plaintiff personally, but it was duly published in a newspaper, and thus the statute was complied with. But this is not all. From and after April the plaintiff had an office at No. 124 State Street in Boston. About the last of June or the first of July he went to Montreal, and remained there and in New York until the last of October. He gave no notice of his going, or where he might be found. He left his office open in the care of his son to transact his business so far as he could do it, and his son signed a paper, which was also signed by the other associates, acknowledging on behalf of the plaintiff the receipt of a written notice of the meeting, seven days before the time appointed for holding it. This appears to be within the scope of his authority, and should, in the absence of contradictory evidence, be deemed equivalent to personal notice.

By the terms of the agreement the whole number of shares was to be twelve thousand; and all subscriptions under one hundred shares were to be paid for on the organization of the company. The other subscriptions were payable one third in cash on the organization of the company, one third in six months with interest, and one third in twelve months with interest; or all in cash, at the option of the subscriber. The recital that a large sum was to be paid to Vogel and Humphrey for the transfer of the letters patent under which the business of the company was to be carried on made the importance of the prompt payment of the subscriptions very apparent to subscribers.

The plaintiff's subscription being for two hundred shares, he was bound by the agreement to pay one third of it upon the organization of the company. The defendants prepared a

stock-book in which they entered his name as a stockholder for two hundred shares. The directors fixed the 16th of July as the time for paying the first instalment, and prepared notices of the fact to be sent to the subscribers. The plaintiff's office had been given up, and he had left no information where he might be addressed. The notice to him was put under the door of his office, and afterwards mailed to him at South Reading, and another notice was sent to him at Montreal. He had no house at South Reading, but had one at Reading. On the 21st of September, the officers of the corporation having heard nothing from him, erased his name from the articles of agreement, made an entry on the stock-book that his stock was forfeited, and permitted another person to take it. The plaintiff contends that they had no right to do this, but were bound to sell his stock in conformity with the provisions of the statute for non-payment of assessments, if they desired to dispose of it. The English authorities that have been cited furnish us with very little aid in deciding this question, for they all arose under the peculiar provisions of the English railway acts. Nor are any of our own cases that have arisen under special acts of incorporation decisive of the question. In all of them, however, the general principles of law applicable to contracts have been recognized and adopted, and these principles ought to govern the present case.

The plaintiff brings his action on the ground that, though his agreement was originally made with his associates as individuals, yet the corporation, upon its organization, became a party to it, and liable to the plaintiff for its performance. Assuming this to be so, yet in order to enable him to enforce its performance against them, he must allege and prove performance or readiness to perform on his part. The obligation on the part of the corporation was to allow him to take the two hundred shares for which he had subscribed. On his part it was to take and pay for them. By the terms of his subscription one third of the amount was payable immediately upon the organization, which took place on the 3d of July. The vote of the directors postponing the payment to the 16th of July was a mere extension of time upon his promise. A notice of the postponement would

hardly be necessary, yet the officers made all reasonable efforts to give him notice of it, and failed because he had gone out of the Commonwealth and left them ignorant of his address.   He remained absent, and neglected to do anything towards the performance of the contract, and on the 21st of September the defendants elected to treat him as having abandoned the contract on his part, and undertook to rescind it on their part by erasing his name from the agreement and from their books, and allowing another party to take the stock which he had been entitled to take.   We think that under the circumstances of the case his delay to perform the contract was unreasonable, and that they were thereby released from all further obligation to him.   As he had never assented to the organization of the corporation, or to any of the acts done under it, they were authorized to treat him at that time as never having been a member. There is nothing inconsistent with this view in *Holyoke Bank* v. *Goodman Paper Manuf. Co.* 9 Cush. 576, or any of the other cases cited for the plaintiff.   As they had received nothing from him, they had nothing to do in order to rescind the contract but to cancel his obligations to them.   This they did, and from that time he has been under no obligation to take or pay for any of the stock, nor has he had any right to demand any.

*Judgment on the verdict for the defendants*